After the State had produced its evidence and rested its case, the defendants moved to dismiss the action for want of sufficient evidence to sustain the prosecution. They excepted to the court's denial of their motion and introduced evidence, and at the close of all the evidence again moved for judgment as of nonsuit. To the refusal of the latter motion they excepted, and now insist that they are entitled to the benefit of the first, as well as the second exception. Both the terms of the statute and the decisions of the Court are adverse to this argument. The defendants are entitled to the benefit only of the latter exception. C. S. 4643; S. v.Killian, 173 N.C. 793. Consideration of the latter exception, therefore, includes all the evidence. For this reason the motion to dismiss the action cannot avail the defendant Albert Brinkley, because he admits that he struck the deceased with a rock; nor the defendant Fred (1) because the dying declaration of the deceased was evidence for the jury, and (2) because there was some evidence of a conspiracy or concert of action between the defendants. True, the defendants insist that the dying declaration should have been excluded because it was fragmentary; but the cases cited to sustain this conclusion do not apply to the evidence, for they merely decide that where a witness relates a part of a conversation in behalf of one party, the opposing party is entitled to the whole conversation. But here the witness related the entire dying declaration; and the fact that the deceased became too weak "to tell the whole story," and then fell into unconsciousness does not render incompetent the declaration he made after saying, "I know I am going to die." S. v. Shouse,166 N.C. 306; S. v. Williams, 168 N.C. 191; S. v. Watkins, 159 N.C. 482; S.v. Laughter, ibid., 488.
The judge instructed the jury in substance that the defendant Albert admitted that he struck the mortal blow, and that the burden was upon him "all the way through" to show mitigating facts and circumstances to reduce the crime, and to make good his plea of self-defense. To this instruction the defendants objected on the ground that the burden of proof does not shift on establishing a prima facie case by the State, but continues on the State throughout the trial. His Honor further instructed the jury in substance that the intentional killing of a human being with a deadly weapon implies malice, and that the burden then rests upon the defendant to show to the satisfaction of the jury facts and circumstances sufficient to excuse the homicide or to (723) reduce it to manslaughter. This is a correct legal proposition, and the charge must be considered in its entirety. In S. v. Capps, 134 N.C. 627, *Page 772 
it is said, "There is no principle in the criminal law better settled than that, where the killing with a deadly weapon is admitted, or proved, in the sense that it is established as a fact in the case, the law implies or presumes malice, and at common law the killing, if nothing else appears, is murder. S. v. Willis, 63 N.C. 26; S. v. Johnson, 48 N.C. 266; S. v.Brittain, 89 N.C. 481. When this implication is raised by an admission or proof of the fact of killing, the burden is upon the defendant of showing all the circumstances of mitigation, excuse or justification to the satisfaction of the jury. S. v. Johnson and S. v. Willis, supra; S. v.Vann, 82 N.C. 631; S. v. Barrett, 132 N.C. 1005. And that burden continues to rest upon him throughout the trial. S. v. Brittain, supra." And in S. v.Lane, 166 N.C. 339: "The burden is on the defendant to establish such facts to the satisfaction of the jury, unless they arise out of the evidence against him. This rule has been uniformly adhered to by this Court in indictments for homicide. S. v. Quick, 150 N.C. 820. This principle has been reiterated by us in more recent cases. S. v. Worley, 141 N.C. 764; S.v. Yates, 155 N.C. 450; S. v. Rowe, ibid., 436; S. v. Simonds,154 N.C. 197; S. v. Cox, 153 N.C. 638; S. v. Fowler, 151 N.C. 731; and formerly in S. v. Clark, 134 N.C. 698; S. v. Brittain, 89 N.C. 481." In North Carolina no principle in the law of homicide is more firmly established than this. S. v. Wilcox, 118 N.C. 1131; S. v. Fowler,151 N.C. 731; S. v. Hagan, 131 N.C. 802; S. v. Brittain, 89 N.C. 501; S. v.Cameron, 166 N.C. 379; S. v. Orr, 175 N.C. 773; S. v. Spencer,176 N.C. 715. In White v. Hines, 182 N.C. 275, in discussing the burden of proof in civil actions this Court held that the rule therein stated was not intended in any way to modify the well established principles applying to the law of homicide.
After stating certain contentions submitted by the State, his Honor charged the jury as follows: "If you find that the defendants entered into a common enterprise, a joint enterprise there, and that they both wilfully entered into a combat with this man, fought him wilfully and wrongfully, and assaulted him with a deadly weapon, struck him a blow which resulted fatally, without excuse or justification, you will find them guilty of murder in the second degree, unless they have shown to your satisfaction such facts and circumstances as would reduce it to manslaughter by rebutting and doing away with the element of malice." To this instruction the defendants excepted on the ground that the evidence did not justify any theory or contention that both the defendants fought or assaulted the deceased, or that there was concert of action between them at or preceding the time the mortal blow was inflicted. (724) We are not prepared to concur in this conclusion. Testimony as to what took place between the defendants and the deceased at Newton on the day before the homicide and afterward; as to *Page 773 
"a handful of bills" exhibited on Saturday by the deceased in the presence of the defendants; as to the defendants' suggestion that he should go to Fred's house on Sunday and play cards with them; as to Fred's promise to provide one-half gallon of liquor; as to the drinking, and shooting of dice; as to the game of poker which, began at 5 in the afternoon was continued by moonlight until 10 o'clock; as to the loss of money by the deceased and an effort to borrow more; as to the quarrel between him and Albert in Fred's presence; as to their withdrawal from the woods together — Albert followed by the deceased and the deceased by Fred — and their conduct on the way; as to the mortal blow and the outcry of the deceased, "Boys, you have killed me; I did not think you'd do it" — these and other circumstances constituted evidence for the jury on the question whether the defendants had previously conspired together, or whether at the time the mortal blow was given they were acting in concert. If the alleged conspiracy was established, the acts and declarations of each of the defendants in furtherance of the common illegal design were admissible against both. S. v. Jackson, 82 N.C. 565; S. v. Anderson,92 N.C. 732; S. v. Brady, 107 N.C. 828; S. v. Mace, 118 N.C. 1244. The exceptions relating to this instruction cannot, therefore, be sustained.
The court's refusal to permit the defendant Fred Brinkley to testify that the deceased said a short while after the blow was given that he did not have his knife, and the court's refusal to permit the defendants to show that Preston Drum, who was examined for the defendants, had been subpoenaed by the State, cannot be assigned for reversible error. As to the former, if the declaration of the deceased had been admitted, it would have been entirely consistent with the theory that he had not attempted to use a knife, and its tendency to corroborate Fred or any other witness would have been negligible; and as to the latter, the principle announced in S. v.Harris, 166 N.C. 243, and other cases, would not apply for the reason that there is nothing in the record to show that the State would not have introduced Preston Drum as a witness in rebuttal. As said in S. v.Roberson, 150 N.C. 840, "We are of opinion that the rejected evidence tended to throw no light upon the real question at issue, and could not possibly have been of any value to the defendants had it been admitted."
The defendants requested the court (1) to instruct the jury that if they accepted the testimony offered by the State as to the dying declaration of the deceased, this testimony would be effective to raise a reasonable doubt as to the guilt of Albert; and (2) that if the jury should be in doubt as to which of the defendants struck the mortal blow, both defendants should be acquitted. These prayers (725) were properly refused; the first embodies an expression as to *Page 774 
the weight of the evidence; besides Albert admitted and Fred testified that Albert struck the mortal blow.
The defendants excepted also to the court's analysis of certain contentions; but an exception of this character cannot be entered first after verdict; it must be taken during the charge or at its conclusion.Phifer v. Comrs., 157 N.C. 150; S. v. Tyson, 133 N.C. 692; S. v. Davis,134 N.C. 633; Green v. Lumber Co., 182 N.C. 681.
We have carefully examined all the prayers for instructions which were tendered by the defendants in connection with the charge of the court, and are of opinion that his Honor submitted to the jury, in substance at least, all the contentions of the defendants, and did not unduly stress the contentions of the State. "To permit a party to ask for a new trial because of an omission of the judge to recite all the details of prolix testimony, or for an omission to charge in every possible aspect of the case, would tend not so much to make a trial a full and fair determination of the controversy as a contest of ingenuity between counsel." Boon v. Murphy,108 N.C. 191. His Honor was careful to instruct the jury as to the defendant Fred that the burden was upon the State to satisfy the jury beyond a reasonable doubt of his participation in the difficulty. The jury evidently concluded from the admission of Albert that he struck the mortal blow with a rock, and that, failing to show such facts and circumstances as were sufficient to excuse the homicide or to reduce it to manslaughter, he was guilty of murder in the second degree; and that Fred aided and abetted Albert, but not with intent to kill, and was therefore guilty only of manslaughter. 21 Cyc. 694.
Upon review of the entire record, we find no reason for interfering with the verdict and judgment of the court.
No error.
Cited: S. v. Miller, 185 N.C. 684; S. v. Reagan, 185 N.C. 712; S. v.Collins, 189 N.C. 21; S. v. Trott, 190 N.C. 679; S. v. Franklin,192 N.C. 724; S. v. Waldroup, 193 N.C. 15; S. v. Boswell, 194 N.C. 265; S.v. Earp, 196 N.C. 166; S. v. Banks, 204 N.C. 239; S. v. Dalton,206 N.C. 514; S. v. Keaton, 206 N.C. 686; S. v. Norton, 222 N.C. 420. *Page 775 
(726)